**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILBER BENAVENTE, *on behalf of himself,*<br>*FLSA Collective Plaintiffs, and the Class,* | Case No. |
| Plaintiff, | **CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| DIAMOND CENTRAL. LLC,<br>ETRUSCO BINI, and,<br>JENNIFER BONILLA, | |
| Defendants. | |

Plaintiff WILBER BENAVENTE (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, DIAMOND CENTRAL, LLC (the "Corporate Defendant"), ETRUSCO BINI, and JENNIFER BONILLA (the "Individual Defendants") (hereinafter, Corporate Defendant and Individual Defendants are collectively the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from

1

Defendants: (1) unpaid overtime wages; (2) unpaid wages, including overtime, due to time shaving; (3) liquidated damages; and (4) attorney's fees and costs.

2.     Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages; (3) unpaid wages, including overtime, due to time shaving; (4) unpaid spread of hours premiums; (5) statutory penalties; (6) liquidated damages; and (7) attorney's fees and costs.

3.     Plaintiff additionally brings individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), due to Defendants' unlawful discrimination against him on the basis of his age and national origin, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

4.     Plaintiff brings additional individual claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), due to Defendants' unlawful discrimination against him on the basis of his age and national origin, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

5.     Plaintiff brings additional individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*., due to Defendants' unlawful retaliation against him for asserting his rights under the foregoing statutes, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

6.     Plaintiff brings additional individual claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, due to Defendants' unlawful retaliation against him for asserting his rights under the foregoing statutes, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.     Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.     Plaintiff WILBER BENAVENTE is a resident of Queens County, New York.

10.     Individual Defendants ETRUSCO BINI is the founder and owner of Corporate Defendant DIAMOND CENTRAL, LLC.

11.     Individual Defendant JENNIFER BONILLA operates, and manages Corporate Defendant DIAMOND CENTRAL, LLC.

12.     Defendants own and operate two (2) OSHA training/certification schools both under the trade name "Diamond Central" in Queens, New York, at the following locations:

    a)  Corona - 40-10 National Street 2nd FL, Corona NY, 11368; and

    b)  Elmhurst - 4009 82 Street 3rd FL, Elmhurst NY, 11373

    (collectively the "Schools").

13. Defendants' Schools are collectively owned and operated as a single integrated enterprise under the common control of Defendants. The Schools are engaged in related activities, share common ownership, and have a common business purpose:

    a) Defendants advertise both of their locations on their website, and classes at either location can be booked from the same website, https://mydiamondcentral.com/. *See* **Exhibit A**.

    b) Defendants admit that Individual Defendants jointly operate and manage the Schools on various articles about their business, including:

        i. https://trabajadorinmigrante.com/2020/10/bini-etrusco-de-diamond-central-abriremos-cursos-de-carpinteria-lectura-de-planos-contratos-y-estimados/,

        ii. https://trabajadorinmigrante.com/2021/01/etrusco-bini-y-jenny-bonilla-construyendo-empresa-en-plena-pandemia/, and

        iii. https://queenslatino.com/diamond-central-capacita-trabajadores-latinos-osha/.

    c) *See* **Exhibit B**, the above three articles, translated to English, revealing Individual Defendants' joint operation and management of Corporate Defendant and both Schools.

    d) Employees, merchandise, and supplies are interchangeable among both of Defendants' locations. Throughout Plaintiff's employment with Defendants, Defendants regularly interchanged employees, including Plaintiff, between the Schools to perform work at either location, on an as-needed basis.

14. Defendant DIAMOND CENTRAL, LLC is a domestic limited liability company organized under the laws of New York, with a service of process address at 525 Huntington Road, Bridgeport, CT 06610.

15.     Individual Defendant ETRUSCO BINI is the owner and founder of Corporate Defendant. Individual Defendant ETRUSCO BINI exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ETRUSCO BINI frequently visits the Schools. Individual Defendant ETRUSCO BINI exercises the power to (and also delegates to managers and supervisors the power to: (i) fire and hire employees, supervise and control employee work schedules and conditions of employment, and (ii) determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Schools may complain to Individual Defendant ETRUSCO BINI directly regarding any of the terms of their employment, and Individual Defendant ETRUSCO BINI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant ETRUSCO BINI exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant ETRUSCO BINI had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

16.     Individual Defendant JENNIFER BONILLA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant JENNIFER BONILLA frequently visits the Schools. Individual Defendant JENNIFER BONILLA exercises the power to (and also delegates to managers and supervisors the power to: (i) fire and hire employees, supervise and control employee work schedules and conditions of employment, and (ii) determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the School may complain to Individual Defendant JENNIFER BONILLA directly regarding any

of the terms of their employment, and Individual Defendant JENNIFER BONILLA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant JENNIFER BONILLA exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant JENNIFER BONILLA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

17.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

18.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff asserts claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including but not limited to, agents, flyer distributors, trainers, telemarketers, and instructors, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (hereinafter, "FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff  and FLSA Collective Plaintiffs overtime wages for hours worked in excess of forty (40) in a workweek, and their proper wages owed for all hours worked, including overtime, due to a

policy of time shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff asserts claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including but not limited to, agents, flyer distributors, trainers, telemarketers, and instructors, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Members" or "Class").

23.     The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also able to be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.     The proposed Class is so numerous that a joinder of all Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of

that number are presently within the sole control of Defendants and there is no doubt that there are more than forty (40) members of the Class.

25.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants to: (i) failing to pay the minimum wage, (ii) failing to pay overtime wages for hours worked in excess of forty (40) in a workweek, (iii) failing to pay proper wages for all hours worked, including overtime, due to time shaving; (iv) failing to pay spread of hours premiums for workdays with a spread of ten or more hours; (v) failing to provide proper wage statements per requirements of NYLL; and (vi) failing to properly provide wage notices, at the date of hiring and annually, per requirements of NYLL.

26.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

27.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Class Plaintiffs in wage and hour cases.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the State violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in complaints a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of New York law and applicable state laws;

b. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d. Whether Defendants paid Plaintiff and Class Members for all hours worked, including overtime wages for all overtime hours worked;

e. Whether Defendants compensated spread of hours premiums to Plaintiff and Class Members for all workdays with a spread of ten or more hours;

f. Whether Defendants provided proper wage statements to Plaintiff and Class Members as required under NYLL and applicable state laws; and

g. Whether Defendants provided proper wage and hour notice to employees, pursuant to the requirements of NYLL and applicable state laws.

## **STATEMENT OF FACTS**

*Wage and Hour Claims*:

31.     On or around December 18, 2022, Plaintiff WILBER BENAVENTE was hired by Defendants to work as a flyer distributor at both of Defendants' "Diamond Central" Schools, located at (i) 40-10 National Street 2nd FL, Corona NY 11368 and (ii) 4009 82 Street 3rd FL, Elmhurst NY 11373. Plaintiff was interchanged between the two locations by Defendants, based on Defendants' needs. Plaintiff was employed by Defendants until on or around May 26, 2023. Plaintiff's duty was to distribute Defendants' flyers on the streets surrounding the two locations.

32.     At all times of his employment, Plaintiff was scheduled by Defendants to work six (6) days per week, with only Thursdays off. Plaintiff was scheduled to work Saturdays from 7:00 a.m. to 6:00 p.m. for eleven (11) hours per day, and 7:00 a.m. to 1:00 p.m. for six (6) hours per day on the remaining five days, for a total of forty-one (41) hours per workweek. During Plaintiff's employment with Defendants, FLSA Collective Plaintiffs and Class Members worked similar hours.

33.     Throughout his employment, Defendants intentionally failed to compensate Plaintiff for all overtime hours worked. Although Plaintiff was scheduled by Defendants to work forty-one (41) hours every week, Defendants only compensated Plaintiff for forty (40) hours every week instead. FLSA Collective Plaintiffs and Class Members were similarly not compensated for any hours worked in excess of forty (40) in a work week.

34.     Defendants were aware that Plaintiff was not being paid for all scheduled overtime hours as Defendants were in the position to (i) create Plaintiff's 41-hour schedule every week, (ii) require Plaintiff to perform 41 hours of work every week, and (iii) compensate Plaintiff for only 40 hours every week despite scheduling and requiring Plaintiff to perform 41 hours of work every week.

35.     At all times of his employment, Plaintiff was compensated by Defendants in cash at an hourly rate of thirteen dollars ($13.00) per hour, below the prevailing New York State minimum wage of fifteen dollars ($15.00) per hour.

36.     At all times, Defendants failed to compensate Plaintiff at the proper New York State minimum wage for all hours worked. Defendants similarly failed to compensate Class Members at the proper New York State minimum wage for all hours worked.

37.     Defendants were aware that Plaintiff was failing to earn the prevailing New York State minimum wage at all times, as Defendants were responsible to (i) set Plaintiff's payrate to $13.00 per hour, (ii) create Plaintiff's 41-hour schedule every week, and (iii) compensate Plaintiff at rates below the minimum wage every week after requiring Plaintiff to perform 41 hours of work.

38.     Throughout his employment and approximately two (2) times per week, Defendants required Plaintiff to perform an additional ten (10) minutes of work after Plaintiff's schedule had ended, for which Defendants would never compensate Plaintiff for. FLSA Collective Plaintiffs and Class Members were similarly required to perform additional work after their scheduled shifts ended and not paid for such work by Defendants.

39.     Further, because Plaintiff was always scheduled to work forty-one (41) hours per week at all times of his employment, any off-the-clock work Plaintiff performed for Defendants was always unpaid.

40.     Defendants were aware that Plaintiff was not being paid overtime premiums for all overtime hours worked as Defendants were the ones to create Plaintiff's 41-hour schedule every week and require Plaintiff to perform additional unpaid work every week. Defendants knew that requiring Plaintiff to perform additional unpaid work would always result in unpaid overtime hours.

41.     Throughout his employment, Plaintiff was scheduled to work eleven (11) hours every Saturday. However, Defendants never compensated Plaintiff any spread of hours premiums for these days. Defendants similarly failed to pay spread of hours premiums to FLSA Collective Plaintiffs and Class Members for days worked with a spread of ten or more hours.

42.     Defendants knew that Plaintiff was not being paid spread of hours premiums as Defendants were the ones to (i) schedule Plaintiff to work 11 hours every Saturday, (ii) require

Plaintiff to perform 11 hours of work every Saturday, and (iii) fail to compensate spread of hours premiums to Plaintiff after scheduling and requiring Plaintiff to perform 11 hours of work every Saturday.

43.    Defendants knowingly and willfully operated their business with a policy of failing to pay the prevailing New York State minimum wage to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the NYLL.

44.    Defendants knowingly and willfully operated their business with a policy of failing to pay all wages owed, including overtime, to Plaintiff, FLSA Collective Plaintiffs, and Class Members, due to timeshaving, in violation of the FLSA and the NYLL.

45.    Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums to Plaintiff and Class Members for all workdays with a spread of ten or more hours, in violation of the NYLL.

46.    Defendants failed to provide Plaintiff and Class Members with proper wage notices at hiring and at all changes of payrate thereafter. Plaintiff did not receive proper wage notices either upon being hired or upon every change of pay rate in violation of the NYLL.

47.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage statements at all relevant times. Class Members also did not receive proper wage statements, in violation of the NYLL.

48.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage

notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

49.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

50.    The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class Members similarly struggle to timely pay debts due to Defendant's continued attempts to hide wrongdoing from employees.

*Age and National Origin Discrimination and Retaliation Claims:*

51.    Plaintiff is currently 63 years old.

52.    Plaintiff is of the Peruvian descent and was born in Peru.

53.    In or around February 2023, Plaintiff witnessed his co-worker, Hector [LNU], being verbally harassed by another employee, Lino [LNU] ("Lino"). Plaintiff reported his

observation of this altercation to his manager, Victor Larrhondo ("Victor"). Victor and Lino are related wherein Victor is Lino's son-in-law.

54.    After Plaintiff's complaint to Victor about his father-in-law, Lino, Victor began discriminating against Plaintiff on the basis of his age and national origin.

55.    Victor is Colombian, and currently approximately 38 years old – 25 years younger than Plaintiff.

56.    After Plaintiff's complaint, Victor began regularly calling Plaintiff "old and dumb", "old and stupid" or "old and slow" every day.

57.    After Plaintiff's complaint, Victor began regularly telling Plaintiff how he believes that Colombians are "superior" to all other South American races, including Plaintiff's. Victor would regularly tell Plaintiff that Mexicans, Dominicans, and Peruvians are "dumb", "stupid" or "lazy" and that "being a flyer distributor is all you [Plaintiff] will ever amount to because you are an old Peruvian."

58.    After Plaintiff's complaint, Victor began searching for ways to get Plaintiff fired. Victor began following Plaintiff outside while Plaintiff distributed flyers and would take pictures of Plaintiff, attempting to photograph Plaintiff doing anything that Victor believed would get Plaintiff in trouble or fired.

59.    Plaintiff complained about Victor's discriminatory acts and harassment as described above to Individual Defendants ETRUSCO BINI and JENNIFER BONILLA multiple times, but they both ignored Plaintiff's complaints every time.

60.    Defendants were aware that their manager, Victor, was discriminating and harassing Plaintiff on the basis of his age and national origin yet failed to take any action upon such discrimination.

61.     Based on Defendants' knowledge of Victor's actions and failure to act upon such knowledge, Defendants essentially granted their manager the implied permission to harass and discriminate against Plaintiff due to his age and national origin.

62.     As a result of Individual Defendants ETRUSCO BINI and JESSICA BONILLA'S failures to act upon the manager's discriminatory acts, Victor's discrimination against Plaintiff continued until Plaintiff was ultimately retaliated against and terminated.

63.     On or around May 26, 2023, Plaintiff attended a team meeting with Individual Defendants ETRUSCO BINI, JENNIFER BONILLA, Victor, and other employees. At this meeting, Plaintiff complained about Victor's continuous discrimination and harassment. As a result of Plaintiff complaining about his discrimination at a meeting, Individual Defendants ETRUSCO BINI and JENNIFER BONILLA terminated Plaintiff on the spot. Plaintiff asked Individual Defendant ETRUSCO BINI why he was being fired, and Individual Defendant ETRUSCO BINI simply responded "that's just my decision."

64.     Defendants discriminated against Plaintiff on the basis of his age and national origin as a result of Plaintiff complaining about Victor's verbal harassment against another employee. When Plaintiff (i) persevered through Victor's discrimination and did not quit as Victor intended, and (ii) complained about Victor's discrimination and harassment at a team meeting, Defendants then resorted to retaliating against Plaintiff and terminated him on the spot.

65.     Defendants' retaliation against Plaintiff was due to Plaintiff's complaints regarding Defendants' age and national origin discrimination.

66.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members.

## STATEMENT OF CLAIM
### COUNT I
### VIOLATION OF FAIR LABOR STANDARDS ACT

67.     Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

68.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

69.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

70.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

71.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs overtime wages for hours worked in excess of forty (40) hours per workweek.

72.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs all wages owed, including overtime for all hours worked in excess of forty (40) hours per workweek, due to timeshaving.

73.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

74.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

75.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

76.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

77.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and unpaid overtime, plus an equal amount as liquidated damages.

78.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF NEW YORK LABOR LAW**

79.     Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

80.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

81.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members at the prevailing New York State minimum wage, in violation of the NYLL.

82.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members overtime wages for hours worked in excess of forty (40) in a workweek.

83.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members all their wages, including overtime at a rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) in a workweek, due to timeshaving, in violation of the NYLL.

84.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for any workdays with a spread of ten or more hours, in violation of the NYLL.

85.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notices, at date of hiring and annually thereafter, as required under the NYLL.

86.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage statements, as required under the NYLL.

87.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, unpaid overtime, unpaid spread of hours premiums, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## COUNT III
## DISCRIMINATION UNDER THE
## NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. Exec. Law § 292, *et seq.*)

88.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

89.    The New York State Executive Law § 296(1)(a) provides that:

"[I]t shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or

domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

90.     Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of his age and national origin.

91.     In this case, Plaintiff complained to Defendants' manager, Victor, about Plaintiff observing his co-worker Hector [LNU] be verbally abused by another employee, Lino, who happened to be Victor's father-in-law. As a result of this complaint against Victor's father-in-law, Defendants' manager Victor began discriminating against Plaintiff on the basis of his age and national origin through regular discriminatory comments.

92.     When Plaintiff complained to Individual Defendants ETRUSCO BINI and JENNIFER BONILLA about Victor's discrimination against Plaintiff, Individual Defendants ETRUSCO BINI and JENNIFER BONILLA took no action upon Plaintiff's complaints and allowed Victor's discriminatory conduct to continue.

93.     This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

94.     As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT IV**
**DISCRIMINATION UNDER THE**
**NEW YORK CITY HUMAN RIGHTS LAW**

95.     Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

96.     The New York City Administrative Code §8-107(1) provides that:

"[I]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

97.     In this case, Plaintiff complained to Defendants' manager, Victor, about Plaintiff observing his co-worker Hector [LNU] be verbally abused by another employee, Lino, who happened to be Victor's father-in-law. As a result of this complaint against Victor's father-in-law, Defendants' manager Victor began discriminating against Plaintiff on the basis of his age and national origin through regular discriminatory comments.

98.     When Plaintiff complained to Individual Defendant ETRUSCO BINI and JENNIFER BONILLA about Victor's discrimination against Plaintiff, Individual Defendant ETRUSCO BINI and JENNIFER BONILLA took no action upon Plaintiff's complaints and allowed Victor's discriminatory conduct to continue.

99.     This discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

100.    As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT V**
**RETALIATION UNDER THE**
**NEW YORK STATE HUMAN RIGHTS LAW**
(N.Y. Exec. Law § 292, *et seq.*)

101.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

102.    New York State Executive Law § 296(7) provides that:

"[I]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate. . . against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

103.    As alleged herein, Plaintiff was retaliated against by Defendants by being terminated after Plaintiff complained about Defendants' manager's discriminatory conduct multiple times.

104.    This retaliatory conduct was in willful disregard of the provisions of the NYSHRL.

105.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

### COUNT VI
### RETALIATION UNDER THE
### NEW YORK CITY HUMAN RIGHTS LAW
**(N.Y.C. Admin. Code § 8-101, *et seq.*)**

106.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

107.    The New York City Administrative Code §8-107(1) provides that:

"[I]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter,. . . (v) requested a reasonable accommodation under this chapter. . ."

108.    As alleged herein, Plaintiff was retaliated against by Defendants by being terminated after Plaintiff complained about Defendants' manager's discriminatory conduct multiple times.

109.    This retaliatory conduct was in willful disregard of the NYCHRL.

110.    As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wages due under the NYLL;

d.    An award of unpaid overtime compensation due under FLSA and the NYLL;

e.    An award of unpaid spread of hours premiums due under the NYLL;

f.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

g.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay all wages overtime compensation and spread of hours premium pursuant to NYLL;

h.    An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

i.   An award of all applicable damages due to Defendants' discriminatory conduct under the NYSHRL and the NYCHRL;

j.   An award of all applicable damages due to Defendants' retaliatory conduct under the NYSHRL and the NYCHRL;

k.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

l.   Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiff as Representative of the Class; and

o.   Such other and further relief as this Court deems just and proper.

<u>**JURY DEMAND**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 24, 2023                         Respectfully submitted,


By: */s/ C.K. Lee*_____

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*